CARL-ART, INC. *vs.* PAULINE CARDULLO.

APRIL 20, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Appeal sustained, decree appealed from modified as stated in opinion and parties directed to present for approval form of decree to be entered in superior court.

BAKER, J. This is a petition brought under the workmen's compensation act, general laws 1938, chapter 300, by an employer against its employee to review a preliminary agreement. Following a hearing in the superior court a decree was entered granting the petitioner certain relief and from the entry of that decree the respondent has duly prosecuted her appeal to this court.

It appears from the evidence that on February 1, 1949 respondent sustained an injury by accident arising out of and in the course of her employment by the petitioner while operating a power press. As a result of the accident she suffered a severe compound fracture of her left index finger which was crushed. She was taken immediately to a hospital where all of the first phalange and part of the second phalange of such finger were amputated. She remained in the hospital about three days and then went to her home receiving further necessary treatments from her doctor. On February 10, 1949 the parties entered into a preliminary agreement, duly approved by the director of labor, whereby she was to receive compensation payments for the duration of total incapacity, and specific payments for the loss of the portion of her index finger. G. L. 1938, chap. 300, art. II, §11, as amended.

The evidence also shows that the stump of respondent's finger did not heal in a satisfactory manner; that she complained of pain; and that according to her physician a neuroma developed, that is to say, "a clubbing of the sensory nerve of the finger which will imbed itself in the scar and make the stump very painful and useless." That condition necessitated a second operation and on July 9, 1949 the remainder of the second phalange of her injured finger was removed. She left the hospital the following day and was treated by her doctor until July 21, 1949 when he discharged her. He testified that at such time the wound was well healed and the stump was soft. He advised her that when the tenderness had subsided she could resume her employment. On September 26, 1949 respondent returned to work and was assigned to her previous job by the petitioner. However, she remained at work for only two days and then left of her own volition. She complained that the stump of her finger was still sensitive; that it became cold and stiff; and that she was unable to operate the press and do her usual work. Thereafter she tried without success to obtain work as a waitress, counter girl, or saleslady.

In October 1949 petitioner filed in the office of the director of labor its present petition which alleged in substance that the incapacity of respondent due to the above injury had ended or diminished, and prayed that a decree be entered ordering discontinuance of compensation payments or making such order as justice might require. After the petition was heard in the superior court the trial justice entered a decree containing several findings of fact. In her appeal now before us respondent is attacking the third finding of fact and the order of the court as set out in such decree. They read as follows: "3. As of the date of this decree the respondent is no longer totally incapacitated and is able to do the kind of work she was doing when injured, but temporarily has a reduced earning capacity. Wherefore it is Ordered, Adjudged and Decreed

that the petitioner pay the respondent not more than Eighteen Dollars ($18) per week, such amount to be reduced pursuant to her earnings in accordance with the provisions of the Workmen's Compensation Act, and if the respondent fails to return to work within a reasonable time from the entering of this decree, all payments of compensation shall be suspended."

The respondent does not seriously question the finding that she is no longer totally incapacitated but is only partially incapacitated as indicated in the decree. There is legal evidence supporting that conclusion. She does, however, contend that there is no such evidence to justify the finding that she is able to do the kind of work she was doing when injured. In our judgment the evidence on that question is conflicting. Respondent testified in substance that after a two days' trial in September 1949 she found she could not work on a press. Also a doctor who specialized in neuropsychiatric disorders and who examined her several times testified in her behalf that in his opinion she was suffering from a posttraumatic neurosis and neuritis both causally connected with her injury; that she was emotionally disturbed; and that she could not operate a press.

On the other hand the doctor who operated on respondent's finger and another doctor who had occasion to examine her before and after the second operation testified generally that in their respective opinions, after a period of time sufficient for the stump to toughen, ordinarily from three to six months, she could perform the same kind of work she was doing when injured. The first doctor believed that she should be rehabilitated in about two months' time; that the alleged coldness of the stump was probably due to impaired circulation and would eventually disappear with use, which was beneficial; and that in removing findings from the press her middle finger could be used in place of the stump of the index finger.

The other doctor above referred to testified as follows: "Q. Doctor, on September 30th did you feel she could have gone back to the work she was doing there? A. So far as my examination was concerned there was no apparent reason why she couldn't do that work." He did state that at times a person injured on a press has a fear of going back to work on it but he also gave the following testimony: "Q. Well, let me put it this way, Doctor. You would say that on September 30th when you examined her there was an impairment in her earning capacity, is that correct, - - * * * A. At that time that she went back to work she obviously would not be able to do her work as rapidly as she did it before the injury. The same would hold if she had no injury at all, if she had been away from work for several weeks on vacation or because of illness she would not be able to do it with the same dexterity that she did the day she quit work. But within a short time, within a few weeks and surely within a few months she would be able to gain an amount of dexterity that would allow her to do her work rapidly and accurately."

It is clear that in making his decision the trial justice accepted the opinions of the doctors called by petitioner in respect to the ability of the respondent to eventually resume her former job. In our judgment therefore there was legal evidence to support his third finding of fact which in such circumstances becomes conclusive in the absence of fraud under the provisions of the workmen's compensation act, G. L. 1938, chap. 300, art. III, §6.

However, in relation to the concluding order of the superior court hereinbefore set out respondent argues that it was not justified by the evidence; that it gave petitioner too much discretion; and that it was not wholly fair to her. In our opinion this argument has merit and such order should be modified. In the situation which is presented by the instant record it is clear that from an employment viewpoint it is the legal duty both of the peti-

tioner and the respondent to be reasonably cooperative in attempting to bring about the rehabilitation of the employee. The decree in question does not fully recognize that duty.

Upon consideration we are of the opinion that in the circumstances the decree should be modified to provide that when petitioner notifies respondent that it has a job for her, whether on a press or otherwise, she should report for work within a time certain after receiving the above notice, such time to be fixed in the decree, and if without valid excuse she does not so report, the petitioner may suspend all payments of compensation. The decree should also provide that if the respondent returns to work with the petitioner she should make a bona fide attempt of reasonable duration to perform the job given her. While so doing and rehabilitating herself she would be entitled by reason of partial incapacity to such adjusted compensation as the act may provide in the circumstances then existing.

If she voluntarily leaves such employment thereafter petitioner may suspend payment of compensation until respondent shows that she has made a reasonable attempt to do the work offered but was unable to do it after a fair trial. Such decree should expressly state that it is without prejudice to the right of either party to take any further action deemed necessary to litigate such issues as are not involved in this proceeding.

The respondent's appeal is sustained, the decree appealed from is modified as above stated; otherwise it is affirmed; and on April 30, 1951 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for petitioner.

*Guerino Della Grotta, Joseph Mainelli,* for respondent.